## BEATTY v. RUTLEDGE MOTORS, Inc., et al.

Industrial Commission.
December 12, 1949.

Samuel H. Adams, West Palm Beach, for claimant.

R. C. Prescott, West Palm Beach, for defendants.

JAMES R. KNOTT, Deputy Commissioner.

On March 9, 1949, while working in the course of his employment for Bill Rutledge Motors, Inc., and earning an aver-

age $60 weekly, the claimant William L. Beatty suffered an injury to his right index finger. A disabling condition developed in the finger for which he was treated by Dr. Lorenzo James at the expense of the employer and insurance carrier. Beginning as of May 7 he was paid compensation for five weeks. On June 15 he was discharged by Dr. James as further treatment for the finger, which was still painful, was deemed to be of doubtful benefit.

Claimant had for several years suffered from foot discomfort and pain; in the latter part of 1948 he had split the nail of his right great toe for relief of what he termed an ingrowing toe nail. Dr. Raymond S. Roy treated and prescribed for claimant's foot condition, diagnosed as mildly spastic flat feet, and when he examined claimant's feet on May 7, 1949 he observed some muscle spasm to be present. On June 17, 1949 claimant consulted Dr. Roy with symptoms of great pain in the large and second toes of his right foot. The pain continued for five days, after which time symptoms of gangrene became definite. Claimant was hospitalized on June 28. A diagnosis of endarteritis obliterans was made, and on July 9 a lumbar sympathectomy was successfully performed by Dr. Walter R. Newbern and Dr. Roy to forestall incipient gangrene in the remainder of the affected foot. The already advanced gangrenous condition of the large toe required its partial amputation several days later.

Beatty contends that the onset of the acute symptoms of his toe and foot necessitating the operations described was attributable to the injury to his finger on March 9, 1949. He claims the right to compensation for disability associated with his foot condition, including permanent partial disability due to the loss of the toe by amputation, together with the expenses incident to his hospitalization and medical treatment.

The decision of this claim rests upon the determination of an abstract medical question, with reference to which the testimony of the expert medical witnesses is, as is so frequently the case, at variance. Endarteritis obliterans, which in this case existed prior to claimant's injury, is an organic disease of the vascular system involving spasm of the arteries from abnormal nerve impulses, with a tendency to become localized in the smaller vessels of the upper and lower extremities, e.g., the fingers

and toes; it leads toward obliteration of those vessels and thus, often, to gangrene. Its progress and effects are usually aggravated and accelerated by trauma. The undisputed medical evidence in the present case establishes that claimant's disabling *finger* condition was precipitated by his injury, as an aggravating factor. The impairment of circulation due to the spasm of the vessels in an acutely affected part may be relieved by a sympathectomy, a spinal operation involving severance of the sympathetic nerves governing that part, as in this case, where the gangrene incipient in claimant's foot was arrested.

It is recognized that an activation of endarteritis obliterans in a particular area of the body may, by two methods, lead to an activation or acceleration of the disease in another or adjacent area; viz., through the development of embolae which by blocking the circulation cause an enlargement of the area originally affected, and by causing, through the agency of the nervous system, an associated spasm of the vessels in a new area previously unaffected.

It is contended in the present case that an acute involvement of a new area may so occur even though it lies in a portion of the body distant from the part first affected, and certain medical testimony in the record sustains this view. Conservative medical opinion, however, does not support the opinion that gangrene may be precipitated by an associated spasm of the blood vessels reflected from a *remote* portion of the body, although it is conceded that adjacent vessels governed by the same nerve are susceptible; nor does it recognize the theory that an embolus released through the bloodstream from a part acutely affected can reach and initiate gangrene in a *distant* area of the body. The validity of this viewpoint is shown by analyzing the physiological difficulties of moving an embolus through the bloodstream to such an area. The clot would first (in the present case) move from the finger through the veins to the right side of the heart; thence to the lungs; back to the left side of the heart, then out through the arteries to the foot. As a virtual certainty the clot would become lodged in the microscopically tiny vessels of the lungs, and thus would never reach the foot. The conservative view thus appears to be supported physiologically, and is adopted here, as correct. It follows that the claim for disability and remedial treatment associated with the foot condition, as attributable to the finger injury, must be disallowed.

Beatty also claims to be entitled to further compensation for temporary disability and for permanent partial disability due to the condition of his finger.

The weight of the evidence shows that since June 15, 1949, when his compensation payments were suspended, claimant has continued to be temporarily totally disabled by the condition of his injured finger, which is painful, sensitive, and susceptible to trauma and possible resulting gangrene. The medical testimony establishes that such disability would have existed in the absence of his foot condition. The evidence further shows that an as yet undertermined degree of permanent partial disability of the finger will follow from the injury.

In consideration of the foregoing it is ordered that the claim of William L. Beatty on account of disability and expenses of remedial care and treatment incident to his foot condition is denied.

The claim on account of temporary partial disability since June 15, 1949 due to his finger condition is allowed, and the insurance carrier is ordered to pay compensation at a rate of $22 a week beginning as of June 15, 1949 to date and thereafter until the termination of the healing period of claimant's finger or until otherwise modified or terminated in accordance with the provisions of the Act, and the carrier shall furnish such further medical treatment as the process of his recovery from his finger injury may require. The carrier shall pay to Samuel H. Adams, Esq., the sum of $160 for his legal services on behalf of the claimant.

Questions relating to the compensation payable for permanent partial disability of claimant's finger are not determined in this award.